J. C. DICUS, Jr. and Ernestine DICUS
*v.* Arvilee ALLEN and Margie L. ALLEN

CA 81-43                                    619 S.W. 2d 306

Court of Appeals of Arkansas
Opinion delivered July 1, 1981
[Rehearing denied August 19, 1981.]

*Glover, Glover & Walthall*, for appellants.

*Bob Frazier* and *Fenton Stanley*, for appellees.

Tom Glaze, Judge. This case is a boundary dispute between two adjoining landowners. Appellants initiated an action against appellees for ejectment in circuit court,

requesting the court to compel appellees to remove two mobile homes situated on appellants' property. Appellees defended the action below, affirmatively alleging adverse possession, acquiescence, laches, cancellation and reformation. On appellees' motion, the case was transferred to chancery court where it was tried and decided. The chancellor found against appellees concerning all their affirmative defenses. In addition, the chancellor determined that although there was no dispute that appellant had legal title to the property in their deed, they failed to present a correct survey which located the corners of the property on the ground. Thus, since the chancellor was unable to determine if the appellees' mobile homes were located on appellants' property, he dismissed appellants' complaint. Both parties appeal and, between them, raise six points for reversal.

We agree with the trial court's holding that appellees failed to show evidence which would support any of the defenses they interposed at trial. Appellees offered no proof of mutual mistake to substantiate their claim of reformation nor did they attempt to join all the necessary parties in an effort to prevail on this theory. Of course, this failure on appellees' part may well be due to their election to prove that they had acquired title to part of the appellants' property by adverse possession or acquiescence, contradictory defenses to their claim of mutual mistake.

Concerning the adverse possession claim raised by appellees, one of the appellees, Arvilee Allen, testified at trial that he was not claiming the disputed property by adverse possession. Rather, Allen stated that he and appellant Carl Dicus agreed on where the property line was located. The other evidence in the record certainly supports the court's finding (and Allen's testimony) that no adverse possession claim was intended. The appellants and appellees were good friends and neighbors commencing when they purchased adjoining properties in 1962 and until 1978 or 1979, the years in which several surveys were conducted on the parties' lands to determine property boundaries. Passage over appellants' property to and from the appellees' land was permitted without objection until 1979. In 1979, appellants had a survey prepared in connection with their attempt

to sell their property, and it was not until this time that ill feelings and adverse claims began to surface between the parties. From the evidence, appellees failed to offer evidence to prove the requisite passage of time and intent to show they held any land adversely against appellants.

From the evidence, including Mr. Allen's testimony, appellees' main contention at trial was that appellants had agreed to a dividing line and appellees argue their two mobile homes were placed and are now located on their side of this agreed line. Whether or not an agreement was reached between the parties was certainly in dispute, and based on conflicting testimony and evidence, the chancellor held that no such agreement occurred. The chancellor's finding on this issue of fact was not clearly erroneous or against the preponderance of the evidence, and consistent with Rule 52(a) of the *Arkansas Rules of Civil Procedure*, we will not set aside his finding. From a review of the record, we agree with the chancellor's decision to deny relief on each of the claims asserted by appellee.

Concerning the chancellor's decision to dismiss appellants' complaint, we must disagree. Although appellants raise four points for reversal, we need only discuss one point, which we find is dispositive of the parties' boundary dispute. The appellants and appellees purchased their respective tracts of property in 1962 from a common grantor, the uncle of appellee Margie Allen. The appellees bought nineteen acres and appellants purchased 1.5 acres located immediately west and adjoining the nineteen acre tract. The south boundary of the parties' properties runs along Highway 7. The north boundary of appellees' land is the quarter line. Appellants' north line is bordered by a 3.2 acre tract owned by W. L. Stover and Richard Baker. This 3.2 acre tract was previously owned by appellees and they sold it to Stover and Baker in 1978. Like appellees' tract, the north boundary of the Stover/Baker acreage is the quarter line. Stover also purchased a four acre tract in 1978, which is located immediately west of the tracts owned by Stover, Baker and the appellees. Its north boundary is the quarter line. All four of the tracts mentioned above are within the same quarter section and until 1978 when Stover and Baker purchased the

3.2 and four acre tracts, all of the tracts had been purchased without benefit of a survey.

In 1978, Stover and Baker hired Gary Whitfield, a registered land surveyor, to survey the 3.2 acre tract owned by appellees and also the four acre tract on the west. At the time of this survey, Whitfield showed appellees the corners of appellants' property. Whitfield testified that the east line of appellants' property ran through one of appellees' mobile homes and a second mobile home was located entirely on appellants' property. This apparently was the first clear indication anyone had that appellees may have mobile homes on the land of appellants. Based on the Whitfield survey, Stover and Baker purchased the 3.2 acre tract from appellees and the four acre tract from Golden Marine, Inc.

In 1979, appellants hired Whitfield to survey their tract which they decided to sell. Whitfield used the same points established in his 1978 survey, and his second survey again reflected that appellees' mobile homes were on appellants' land.

At trial, the appellees offered their own land survey expert, Boyd Cardin, who testified that Whitfield used the wrong bearings in establishing the west and east boundaries of the appellants' tract because they do not parallel. Cardin stated that a survey should parallel the nearest section line, and Whitfield failed to do so in his 1978 or 1979 surveys. Whitfield testified that no one, including the Corps of Engineers, which had surveyed this same area many times, had previously established the section line on the ground, and to do so he would have to grid the entire section. The chancellor's dilemma at this stage of the trial was: The legal description reflected in the deeds to all four adjoining tracts did not overlap and appeared accurate, but he determined it was impossible to establish the east and west boundaries of appellants' tract on the ground because a section line had not been found or established. Without a more accurate survey, the chancellor found he could not locate the east/west boundaries or the location of the two mobile homes relative to such boundaries. He proceeded to dismiss appellants' complaint.

The established rule of property is that the original United States Government survey is *prima facie* correct and surveys must conform as nearly as possible with the original government survey. *Carroll* v. *Reed*, 253 Ark. 1152, 491 S.W. 2d 58 (1973). In the instant case, none of the adjoining tracts had ever been purchased or sold relative to any survey until 1978, much less a survey which tied into points established by the United States Government. Under these facts, we find it unnecessary to require the parties to underwrite additional surveys to assure the north/south boundary lines are exactly parallel with the section line.

In 1978, the appellees relied on Whitfield's survey when they sold Stover and Baker the 3.2 acre tract immediately north of appellants' property. Whitfield testified that he shot the appellants' east boundary line to Highway 7 and knew then that the two mobile homes encroached on appellants' land. He informed the appellees of this fact and Whitfield said that they appeared satisfied with the survey. In any event, even appellee Arvilee Allen admits he conveyed the 3.2 acres based on the 1978 Whitfield survey. Thus, as early as 1978, Whitfield had established the corners of appellants' property but did not set the southeast corner until his 1979 survey. Even though these corners are aligned with the lines and corners of the 3.2 acres sold by appellees in 1978, they now choose to disavow the points established by the Whitfield surveys. We believe that it would be inherently unfair to permit appellees to take these inconsistent positions, and we, therefore, hold that they are estopped from rejecting the Whitfield survey when they had relied on it only one year before their dispute arose with appellants. See, *Omohundro* v. *Ottenheimer*, 198 Ark. 137, 127 S.W. 2d 642 (1939), and also 31 C.J.S. *Estoppel*, § 116.

The guides to locating boundaries are set forth in *McKinley* v. *Hilliard*, 248 Ark. 627, 454 S.W. 2d 67 (1970), wherein the court, quoting from *Ewart* v. *Squire*, 239 F. 34 (4th Cir. 1916) stated:

In ascertaining location the guides in the order of importance are: (1) Natural objects; (2) artificial objects; (3) *adjacent boundaries*; (4) courses; (5) distances;

(6) quantity. But the rule is flexible, and it does not control against the intention of the parties as shown by the description taken as a whole ... The order of the importance of the guides is manifestly the more flexible when the description of subdivisions of a tract is ascertained by protraction and not by actual survey. [Emphasis supplied.]

Consistent with the foregoing guidelines, the record reflects that the tracts adjoining appellants' property on the west, north and east sides have corresponding boundaries and descriptions. There are no overlaps or discrepancies in the legal descriptions of any of the four adjoining tracts. Moreover, under the Whitfield surveys, all of the adjoining owners have at least the same quantity of acreage called for in their respective deeds. When appellees' surveyor, Cardin, set out to check Whitfield's surveys, it was his duty solely to locate the lines of the original survey where title to land has been established under a previous survey. He cannot establish a new corner, nor can he even correct erroneous surveys of earlier surveyors. *McKinley* v. *Hilliard, supra*.

We reverse and remand this cause with directions that appellants' complaint be reinstated and a judgment be entered establishing appellees' east boundary in accordance with the Whitfield surveys. Since the Whitfield surveys reflect that appellees' two mobile homes encroach on appellants' property, the court must also order the removal of the homes as prayed for in appellants' complaint.

Reversed and remanded.