Bryant NORWOOD *v.* Sherri ROBINSON

93-176                                                866 S.W.2d 398

Supreme Court of Arkansas
Opinion delivered December 6, 1993

*Evelyn L. Mooreland*, for appellant.

*Gene O'Daniel*, for appellee.

DONALD L. CORBIN, Justice. This case was certified to us by the court of appeals pursuant to Ark. R. Sup. Ct. 1-2(d) because it presents a matter of significant interest requiring the interpretation and interplay of two statutes, Ark. Code Ann. §§ 9-10-113 and 9-10-109(a) (1987). Appellant, Bryant Norwood, appeals a Pulaski Chancery Court order denying his motion for a change of custody. For reversal, he asserts the chancellor erred in requiring a showing of a material change of circumstances since the finding of paternity. Alternatively, appellant asserts the chancellor erred in finding a material change of circumstances did not exist. We affirm the chancellor's order.

Appellant was determined to be the biological father of a child born April 28, 1988, in an uncontested paternity suit. The order was entered on February 2, 1989. In the order finding paternity, appellant was granted reasonable visitation and ordered to pay $160.00 per month in child support. The order did not expressly address custody; however custody vested in the mother pursuant to section 9-10-113(a):

> When a child is born to an unmarried woman, legal custody of that child shall be in the woman giving birth to the child until the child reaches the age of eighteen (18) years unless a court of competent jurisdiction enters an order placing the child in the custody of another party.

Before 1987, no presumption of custody was placed in section 9-10-113; either parent of an illegitimate child could petition for custody under the same three criteria. In 1987, the legislature changed this statute by adding a presumption of custody

in the mother and leaving the father with the right to seek custody after establishing paternity. In the instant case and pursuant to the current statute, custody was established and remained in the mother from the child's birth in April 1988.

Appellant was taken to court on a motion for contempt for his failure to pay child support. After the hearing, the chancellor entered an order on October 16, 1991, finding appellant substantially in arrears in his support payments. One week later appellant filed a motion to change custody. In his motion appellant asserted that a material change of circumstances had occurred and that the best interests of the child would be served in his custody.

Section 9-10-113(a) provides that an illegitimate child shall be in the custody of its mother unless a proper court orders otherwise. Also under this statute, a biological father may petition for custody, provided he has established paternity. Custody may be granted if the court finds the following:

(1) He is a fit parent to raise the child;

(2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and

(3) It is in the best interest of the child to award custody to the biological father.

*Id.* at subsection (c).

Along with the above requirements, the chancellor charged appellant with showing a change of circumstances since the last custody order, which the chancellor deemed the initial determination of paternity. The chancellor added this to the three requirements listed in section 9-10-113(c) since a "material change of circumstances" is required in other change of custody cases pursuant to divorce. *See Bennett* v. *Hollowell*, 31 Ark. App. 209, 792 S.W.2d 338 (1990). The chancellor based this requirement on Ark. Code Ann. § 9-10-109(a)(1) (1987):

Subsequent to the finding by the court that the defendant is the father of the child, the court *shall follow the same guidelines, procedures, and requirements* as set forth

in the laws of this state applicable to child support orders and judgments entered by the chancery court *as if it were a case involving a child born of a marriage in awarding custody*, visitation, setting amounts of support costs and attorneys' fees, and directing payments through the clerk of the court.

(Emphasis added).

Appellant's first point on appeal is that it was error to require the showing of a material change in circumstances in addition to the three criteria stated in section 9-10-113(c). Appellant asserts there had not been an initial determination of custody, and therefore it placed an unfair burden on him to require him to demonstrate a material or substantial change in circumstances.

Appellant's contention there was no initial determination of custody is without merit. Custody vested in the mother at birth pursuant to section 9-10-113(a) and was implicitly affirmed in the paternity order granting the father visitation. At the hearing the following exchange occurred between counsel for appellant and the chancellor:

THE COURT: And it's not relevant anything before the order that gave her custody, whenever that was. It has got to be after that.

[COUNSEL]: Okay. There really has been no order giving her custody, Your Honor. There was an order establishing paternity in February of '89.

THE COURT: Okay. . . .

[COUNSEL]: Well, Your Honor, the statute, 9-10 [113(c)], I've got it here, states that the father may petition the court for custody.

THE COURT: Absolutely.

[COUNSEL]: It does not say that that is contingent upon a change of circumstance.

THE COURT: Well, he has a right, but paternity was established and custody was established back in February of '89.

[COUNSEL]: Well, the statute made no reference of custody, I mean the order. The judgment order made no reference of custody, Your Honor. It simply established paternity and ordered him to pay child support.

THE COURT: And gave him reasonable visitation rights. Okay. Let's go ahead then.

■ Appellant correctly states that Arkansas statutory procedure provides a father may petition for custody after paternity is established. It is not an unfair burden to require the biological father to prove a change of circumstances when the law presumes the child shall be in the custody of the mother and the paternity order establishes visitation. In divorce cases, custody is vested in one or both parents at the time of the divorce. In divorce proceedings, custody shall be awarded on the basis of the best interests of the child regardless of the gender of the parent. Ark. Code Ann. § 9-13-101 (1987). That determination is reflected in the order or decree which is considered a final adjudication. *See McCormac* v. *McCormac*, 304 Ark. 89, 799 S.W.2d 806 (1990). Each has the right to request a change in custody. It is then that party's burden to show that there has been a change in circumstances since the original order establishing custody or that there were facts not presented at the initial hearing that would bear on the best interests of the child. *See Bennett*, 31 Ark. App. 209, 792 S.W.2d 338.

■ Fathers of illegitimate children should certainly bear the same burden as fathers of legitimate children born of marriage. The order establishing paternity gave the statutory presumption the effect of a judicial determination. Implicit in the order of paternity establishing visitation was a determination that custody should continue to rest in the mother. Unless there was a change in circumstances since the order, the child should not be uprooted from her life-long custodial relationship with her mother. We find these statutory sections to be congruous. The finding of paternity and the establishment of visitation therein is a final determination from which to use the same standards as other custody situations.

■ After determining that the chancellor used the correct standard upon which to determine whether or not to grant a

change of custody, we now address appellant's alternative argument. Appellant argues that the chancellor erred in finding that a change in circumstances sufficient to warrant a change in custody had not been shown. Although we review chancery cases *de novo* on the record, the findings of the chancellor will not be disturbed unless clearly against a preponderance of the evidence. *Magnolia School Dist. No. 14* v. *Arkansas State Bd. of Educ.*, 303 Ark. 666, 799 S.W.2d 791 (1990). Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor. *Callaway* v. *Callaway*, 8 Ark. App. 129, 648 S.W.2d 520 (1983); ARCP 52(a). Deference to the chancellor is even greater when dealing with child custody. Repeatedly our courts have stated that there are no cases in which the superior position, ability, and opportunity to view the parties carry as great a weight as those involving minor children. *See e.g. Watts* v. *Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986). We cannot say that the chancellor's determination is clearly against the preponderance of the evidence.

■　Both parents presented witnesses, and conflicting reports came from both sides as to the child's care and treatment. In his motion to change custody, appellant claimed that the child had spent more than half of the time with him at appellant's mother's residence. Further, appellant worried that the environment at appellee's mother's residence and the subsequent move to an apartment was a poor situation for the child. Appellee had moved to an apartment with another single parent and child after leaving her mother's residence. Appellee maintained that she desired to be more independent and assume responsibility for herself and her child. The child support arrearages were put into evidence. In sum, neither party wished the other to have custody, and neither custody situation was ideal. An attorney *ad litem* visited both parents' homes and presented a report in which he stated both parents seemed genuinely concerned about the child and both appeared capable of providing a good home although in both cases it was somewhat crowded.

The chancellor found that appellant failed to demonstrate a substantial change of circumstances in order to justify a change of custody, but visitation was increased. After a *de novo* review of the record as presented to us, we cannot say that the chan-

cellor's findings were clearly against the preponderance of the evidence.

Affirmed.

GLAZE, J., concurs.

NEWBERN, J., dissents.

TOM GLAZE, Justice, concurring. I concur. Ark. Code Ann. § 9-10-113 (1977) provides for the award of custody of an illegitimate child in two instances. One, when a child is born to an unmarried woman, legal custody of that child is presumptively given to the woman unless a proper court places that custody with another party. *See* § 9-10-113(a). This legal presumption recognizes that in many cases, if not most, the biological father is absent and is unavailable to care for the child. The provision does authorize a competent court to place custody in another party if the circumstances warrant and it is shown custody should not be in the mother. In instance two, a biological father, *after he has established paternity* in a competent court, may seek custody of his child if (1) he shows he is a fit parent, (2) he has provided care, supervision, protection, and financial support for the child, and (3) it is in the child's best interests to award the father custody. *See* § 9-10-113(c)(1)(2) and (3). This second procedure merely recognizes the equal protection right a biological father has in establishing a parental and custodial relationship with his child.

In this case, the biological father, Bryant Norwood, did not initially file suit to establish paternity of the parties' child. Instead, the mother, Sherri Robinson, filed her complaint against Bryant, and after *she* established paternity by showing Bryant to be the child's father, the court, by order dated February 2, 1989, awarded Bryant visitation rights and ordered him to pay child support in the sum of $160.00 per month. In that proceeding, Sherri gained legal custody of the parties' child under § 9-10-113(a). Bryant never appealed that court order, nor had he sought custody of the parties' child in that initial proceeding. Clearly, like in divorce proceedings involving children, both Bryant and Sherri had the opportunity to litigate the custody issue. Bryant simply showed no interest in doing so — at least until Sherri sought enforcement of child support arrearages against Bryant.

Approximately two years and nine months after Sherri established paternity in Bryant, Bryant sought custody of the parties' child in the same proceeding Sherri initiated to enforce payment of child support payments. In doing so, Bryant claims the trial judge erred in requiring him to show a material change in circumstances since the time the parties' child was placed in Sherri's custody on February 2, 1989. He argues that he only need show the three criteria in § 9-10-113(c)(1)(2) and (3) which are set out hereinabove.

Bryant, of course, had his opportunity not only to establish paternity, but also to seek custody of the parties' child. He did neither. The February 2, 1989 decree was a final order, and like divorce decrees involving child support payments, custody and visitation rights, the court retained jurisdiction only to enforce those rights or to modify them upon a showing of a material change in circumstances. Ark. Code Ann. § 9-10-109(a) (1987).

Although the three criteria contained in § 9-10-113(c)(1)(2) and (3) are considerations a trial judge will consider when a change of custody is sought, certainly the judge is not limited to those factors. Again, those three factors are ones the trial court considers when a biological father establishes paternity and seeks custody, and here he failed to do either until after an order became final vesting custody in Sherri.

For these reasons and the others related in the majority opinion showing Bryant failed to show a material change of circumstances, I would affirm.

DAVID NEWBERN, Justice, dissenting. When a child is born to an unmarried woman, the child must be in the legal custody of someone, hence the General Assembly's unremarkable determination that custody shall be in the mother who has just given birth. Ark. Code Ann. § 9-10-113(a). The granting of visitation rights to the father in the circumstance of a child newly born is equally unremarkable and, to me, does not signify that the court which established paternity reached any conclusion about which parent should have custody.

Subsection (c) of that same statute says that if the father of the child born in these circumstances wishes to have custody transferred to him, he must show he is a fit parent, has assumed

his responsibilities to the child, and it is in the child's best interest that the father have custody. It does not require a showing of a change in circumstances.

The Chancellor's addition of the requirement that Mr. Norwood show a change in circumstances was wrong. The General Assembly had good reason for leaving that requirement out of the list stated. If the mother of a child is totally incapable of caring for the child, and the father would make an ideal custodian, should a chancellor be allowed to hold that custody must remain with the mother because she has always been incompetent and the father has always been competent, and thus there has been no change in circumstances? Of course not.

Neither the Chancellor's mistake nor the majority opinion is saved by the reference to Ark. Code Ann. § 9-10-109(a)(1) (1987). That statute is a general one setting forth procedure to be followed by the Chancellor after paternity has been established. While it states the Chancellor shall use general rules applicable to determinations with respect to children born of marriages, it has nothing specific about what must be shown to change custody.

Even if it could reasonably be said that § § 9-10-113(a) and 9-10-109(a)(1) are conflicting statutes in *pari materia*, § 9-10-113(a) would control. Where a conflict in two such statutes exists, "the more specific statute controls over the more general one." 2A N. Singer, Sutherland Stat. Const. § 51.02 (5th ed. 1992). The specific should always govern the general as it is a much better indicator of legislative intent. Section 9-10-113(a) is very specific; § 9-10-109(a)(1) is not.

The majority's position sets a dangerous precedent. Despite the fact that we can review this case *de novo* it should be returned to the Chancellor who is in a much better position than we to evaluate the parties' testimony and that of other witnesses. While there is doubt that Mr. Norwood met the second criterion of § 9-10-113(a), that of sufficient support of the child, that doubt is clouded by evidence that the child spent a lot of time with Mr. Norwood and his mother who may well be the child's best hope. There is some suggestion that while in their care, Mr. Norwood gave a good deal of unrecorded financial support to the child. I

simply cannot say how the Chancellor would have, or should have, ruled had changed circumstances not been erroneously used as a criterion for determining which parent should have custody.

I respectfully dissent.