**Richard HERMOSILLO, Appellant,**

v.

**Mary K. HERMOSILLO, Appellee.**

**No. S–3593.**

Supreme Court of Alaska.

Sept. 7, 1990.

---

Sue Williams, Anchorage, for appellant. No appearance by appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

In this appeal a noncustodial parent challenges the custodial parent's right to impose additional conditions of visitation without court approval.

Richard and Mary Hermosillo were divorced on September 22, 1982. Mary was awarded custody of the parties' son and reasonable rights of visitation for Richard were established.

On July 12, 1983, at the request of Richard, the divorce decree was modified "to provide for a set visitation schedule during the summer months." In September 1987, Mary moved to further modify the decree after difficulties arose between the parties. In response, the court modified the decree to require "supervised visitation." Thereafter, Mary, unilaterally and without court approval, added the following conditions to Richard's supervised visits:

1. At least 21 to 28 days prior notice of intent to exercise visitation.

2. Mr. Hermosillo to supply the name, address and daytime telephone number of the supervisor he intends to use to the Custody Investigator's office prior to or at that time. References should also be supplied if the Child Custody Investigator thinks that this is appropriate.

3. Custody Investigator shall contact the supervisor prior to the visitation to inform them of the requirements of a supervised visitation and what actions by a supervisor are appropriate or inappro-

priate. The Custody Investigator shall contact the supervisor after the visitation if there have been problems expressed by either party.

4. Visitation or at least the exchange of the child will occur in a public place, not a hotel room. The visitation shall be scheduled as to place and time and the schedule will be adhered to by the parties if at all possible.

▮ In December 1988, Richard, believing that Mary was in contempt for imposing these conditions on visitation, and for other reasons, filed a "Motion for Order to Show Cause and a Motion for Change of Venue." Both motions were denied by the court. On July 10, 1989, Richard filed a "Motion for Order to Show Cause or, in the Alternative, a Modification of the Visitation Order of September 22, 1987." The superior court summarily denied Richard's motion and assessed "$50.00 in costs and attorney fees for bringing a frivolous motion on grounds previously denied by [the] court." Richard appeals the denial and sanction.[1]

▮ There are only minor differences between Richard's 1989 motion and the one made in 1988, and when the earlier motion was denied, Richard did not appeal.[2] Thus, to the extent that this is an appeal of the contempt issue the appeal is untimely.[3] Therefore, we do not address the contempt issue.[4]

Turning to the superior court's denial of Richard's alternative motion to modify the

---

1. Richard also claims that he was not given an opportunity to be heard with respect to the court order imposing supervised visits and that "the denial of his [motions] without a hearing constituted a denial of due process and an abuse of discretion by the trial court." We find these claims to be without merit.

On the day Mary's attorney submitted the motion requesting supervised visitation, Richard was sent a notice of his "right to file written opposition." Richard, however, made no such filing. Moreover, not providing Richard with an oral hearing concerning his motions was not a denial of due process. "If [a] party desires oral argument on a motion, that party must file a timely notice of hearing." *Cleary Diving Service v. Thomas, Head & Greisen*, 688 P.2d 940, 942 (Alaska 1984); *see also* Alaska R.Civ.P. 77(d). Again, Richard made no such filing.

2. The significant changes are (1) a listing of the conditions on visitation imposed by Mary and (2) an alternative motion to modify the visitation order of September 22, 1987.

3. *See* Appellate Rule 204.

4. We note, however, that wilful interference with visitation rights of the noncustodial parent may be a basis for contempt. *See Webber v. Webber*, 706 P.2d 329, 330 (Alaska App.1985) ("disobedience of the trial court's [custody] order, outside its presence, amounts ... to an 'indirect criminal contempt'"); AS 09.50.010(5) ("disobedience of a lawful judgment, order, or process of the court" constitutes contempt).

visitation order of September 22, 1987, we conclude that the court erred.

 Actions by a custodial parent which substantially interfere with the non-custodial parent's visitation rights "[are] sufficient to constitute a change [in circumstances] which may justify and require a modification of the visitation order," if such modification is in the best interest of the child. *H. v. H.*, 637 S.W.2d 432, 434 (Mo.App.1982); *R.L.S. v. J.E.S.*, 522 S.W.2d 5, 6 (Mo.App.1975) (interference with non-custodial parent's visitation rights by custodial parent is a factor to be considered when modifying custody decree); *see also* AS 25.20.110 (modification must be in best interest of child). The change in circumstances required for modification of visitation rights, moreover, need not rise to the level sufficient to warrant a change of custody. *Harris v. Tarvin*, 246 Ark. 690, 439 S.W.2d 653, 655 (1969). A party seeking to alter the conditions of a custody order, however, must file a motion to modify and obtain court approval of the new conditions. AS 25.20.110 ("An award of custody of a child or visitation with a child may be modified if the court determines that a change in circumstances requires the modification ... and the modification is in the best interests of the child.").[5] A custodial parent has no authority to "modify" a child custody decree unilaterally by imposing conditions which substantially interfere with the noncustodial parent's visitation rights. Only the court has such authority. *See* AS 25.20.110.

 We believe the conditions of visitation imposed by Mary could substantially interfere with Richard's visitation rights.[6] Further, it is undisputed that these conditions are not supported by court order.

The superior court's order denying Richard's "Motion for Order to Show Cause, or in Alternative, a Modification of the Visitation Order of September 22, 1987" is, therefore, REVERSED in part. As Richard's motion to modify was not frivolous, the award of costs and attorney's fees to Mary is, likewise, REVERSED. This matter is REMANDED to the superior court for further proceedings consistent with this opinion.

---

5. Requiring court approval of changed conditions of visitation does not change the rule that "the trial court has discretion to allow the parties to [cooperatively] develop a visitation schedule independently." *Miller v. Miller,* 739 P.2d 163, 164 (Alaska 1987).

6. In summarily denying Richard's motion the trial court did not find whether these conditions imposed by Mary were actually implemented by the Child Custody Investigator. Richard claims, however, that these conditions "hinder or elimi-

nate [his] visitation rights" and that requiring twenty-one to twenty-eight days advance notice of his intent to exercise visitation makes it extremely difficult to visit his son in Fairbanks because of his work and financial status. We also note that if these conditions are implemented Richard would not be allowed to visit or pick up his son at the custodial parent's home. Richard also would have sole responsibility for finding a suitable supervisor who could commit to be available three to four weeks in advance.