Gordon Andrew STELLPFLUG *v.*
Vickie Verleen Doss STELLPFLUG

CA 99-1481                                              14 S.W.3d 536

Court of Appeals of Arkansas
Division I
Opinion delivered April 19, 2000

*Cochran, Schneider & Croxton, P.A.*, by: *Mary M. White Schneider*, for appellant.

*Appellee*, pro se.

WENDELL L. GRIFFEN, Judge. Gordon Stellpflug appeals from the order of the Benton County Chancery Court in which the chancellor reduced his summer visitation with his children. His sole argument on appeal is that the chancellor erred in modifying visitation even though he expressly found there was no change in circumstances to warrant a modification. We agree that appellee did not demonstrate a change of circumstances warranting a modification of visitation. Therefore, we reverse the chancellor's order reducing appellant's visitation.

Appellant and his ex-wife, appellee Vickie Stellpflug, were divorced on September 30, 1996. They had three daughters during their marriage: Megan Stellpflug, born November 10, 1987, Morgan Stellpflug, born September 19, 1990, and Caitlen Stellpflug, born June 24, 1992. The parties' visitation arrangements were modified twice, on May 22, 1997, and on October 10, 1997, before the modification petition was filed in this case. On May 26, 1998, the Benton County Chancery Court approved another order that modified visitation between the parties. Under the terms of this order, the parties agreed that appellant's visitation with his three

daughters would begin one week after the school year ended and would end one week prior to the commencement of the next official school year, for a total of thirteen weeks during the summer. Appellee was to have alternate weekend visitation.

On April 23, 1999, appellee filed a petition to reduce appellant's visitation. She alleged in her petition that 1) the children desired to see their mother more frequently during the summer; and 2) the visitation arrangement created undue hardship for her and the children because she is unable to exercise her alternate weekend visitation during the summer.[1] The chancellor conducted a hearing on the petition for modification on August 26, 1999, and entered an order reducing appellant's visitation.

Appellee admits that when she signed the visitation agreement, she knew that it meant her husband would have the children for the entire summer, but she did not realize "how it was going to affect my children." She maintains that a change of circumstances was shown by her testimony that the summer visitation was difficult on her children, especially Caitlen, the youngest, because appellee was unable to make the lengthy trip from Pea Ridge, Arkansas, to Morris, Illinois, to exercise her weekend visitation during the summer. She also testified that, because her child support was abated while the children were with their father, she had to work two jobs to support herself financially, which also made it difficult for her to exercise her weekend visitation during the summer. She maintains that Caitlen cries whenever appellee returns the girls to their father, and asks to come home when they talk on the phone during their summer visitation.

During the hearing, the following colloquy took place:

> COURT: If I [would] have been notified that they have agreed that she was giving visitation all summer, I would not have signed the order.
>
> APPELLANT'S COUNSEL: I do believe that when I brought the order to the Court I did point that out to you.

---

[1] She also argued that the visitation arrangement should be changed because appellant made unreasonable demands as to the time and location regarding the exchange of the children. The chancellor did not change the transportation arrangements, but did admonish the parties to be reasonable regarding the pick-up and return times.

COURT: It should have been pointed out. I give six weeks in the summer in my routine stuff. The kids are going up there for some time longer than that and the kids have a little time off and it is hard to be involved in things.

APPELLANT'S COUNSEL: I will assert to the Court that I brought it to the Court's attention, I did it for the specific purposes that she was not represented when she entered into this agreement and I was protecting myself by bring it to the Court and saying, this contains all summer visitation.

COURT: Well, anyway.

\*\*\*

COURT: When the children come back just the week before school starts, all that time certainly has to be spent getting ready for school. There's not a lot of time for vacation.

\*\*\*

APPELLANT'S COUNSEL: *She agreed to this order last year. He agreed to this order last year. The fact that she is asking for this to be changed, yet there are no change of circumstances to warrant a change in this order — there are none. There is no testimony that the kids are being mistreated up there or that the kids are lacking in education or that they are lacking in anything to do up there. There is not testimony about that and there has not been any allegation of the change in circumstances.*

COURT: *I know, but it's contrary to the Court's ideas of what is right and wrong.*

APPELLANT'S COUNSEL: When this order was signed, before it was signed, I made sure the Court knew and talked to the Court about it.

COURT: Well, you may have. But as far as I'm concerned there has to be a statement that the court agrees with the factual basis. You may have mentioned it to me and I may have been thinking of something else, but that's not the right answer as far as I'm concerned. *I just don't agree with it, there's too much time.* She gets no time to visit with the children in her free time, or arrange a vacation or take a few days off or something. It just doesn't happen.

APPELLANT'S COUNSEL: The point is, and my argument is, since she agreed to this there has been no change in circumstances,

none whatsoever, and she's coming in here asking the Court to just change it because she doesn't like it and that's not the standard for changing visitation.

COURT: Well, I'm going to order it changed. He'll have six weeks in the summer....

(Emphasis added.)

Appellant maintains this exchange demonstrates that the chancellor specifically found that there had been no material change in circumstances, but nonetheless modified the visitation because the agreement was "contrary to the Court's ideas of what is right and wrong," and because the chancellor "do[es not] agree with it."

■■ On appeal, although we review chancery cases *de novo* on the record, we do not reverse unless the chancellor's findings are clearly against the preponderance of the evidence or are clearly erroneous. *See Heflin v. Bell*, 52 Ark. App. 201, 915 S.W.2d 769 (1996). This court has stated that we know of no case in which the superior position, ability, and opportunity of the chancellor to observe the parties carries as much weight as those cases involving minor children. *See Riddle v. Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989).

■ It is well settled that the chancery court maintains continuing jurisdiction over visitation and may modify or vacate such orders at any time on a change of circumstances or upon knowledge of facts not known at the time of the initial order. *See Digby v. Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978). It is also well settled under Arkansas law that reversal is warranted where a chancellor modifies visitation where no material change in circumstances warrant such a change. *See Tillery v. Evans*, 67 Ark. App. 43, 991 S.W.2d 644 (1999) (reversing where the court modified visitation but conceded the party had no basis upon which to modify custody by stating, "If you want to try again and have some factual basis for your claim, a change of circumstances, then you will be free to do that within ten days"); *see also Leonard v. Steadman*, 59 Ark. App. 5, 95 S.W.2d 189 (1997) (reversing where the chancellor candidly stated that no material change in circumstances had taken place but radically modified visitation on the ground that he was clarifying his earlier decree by defining the meaning of the clause "other reasonable time arranged by the parties").

■ We hold that the chancellor erred in modifying appellant's visitation because it is clear that the only change that occurred in this case was appellee's attitude regarding summer visitation. It appears that the chancellor either signed an order that he did not read, or did not ascertain that the arrangement that he was approving would grant substantial summer visitation to the appellant. The chancellor's concern that appellee did not get any "vacation time" with the children was a matter he should have addressed in his prior order.

■ Appellee, as the party seeking the modification, had the burden below to show a material change in circumstances warranting the change in visitation. *See Hepp v. Hepp,* 61 Ark. App. 240, 968 S.W.2d 62 (1998). She also had the burden to show that the modification is in the best interest of the children. *See Bennett v. Hollowell,* 31 Ark. App. 209, 792 S.W.2d 338 (1990). Although we are sympathetic to the difficulties alleged by appellee, *i.e.,* transportation difficulties, financial difficulties, and homesick children, we must find that appellee simply failed to meet her burden below. Appellee merely testified that her children expressed a desire to see her during the summer, that her youngest daughter gets homesick, and that she has financial difficulty exercising her summer visitation rights. However, she fails to cite any authority to show that these difficulties constitute a material change in circumstances to warrant modification of the visitation arrangements. Nor does she show why reducing appellant's visitation from thirteen weeks to six weeks, a substantial reduction, is in the best interest of the children.

By contrast, the testimony of all parties confirms that the children want to visit their father, and suggests the children are well-adjusted. The attorney ad litem for the children testified that the children stated they enjoyed staying with their father, but they wanted him to be more flexible in allowing them to enjoy summertime activities, such as basketball camp. He further stated that Caitlin likes to spend time with her father but gets homesick. He also indicated the children "do not seem to have any animosity toward anybody and ... seem to have a good relationship with their stepmother."

■ In sum, appellee requested a change in visitation without demonstrating that a material change in circumstances had occurred. This is tantamount to collaterally attacking the order to

which she had agreed. While visitation is always modifiable, our courts require a more rigid standard for modification than for initial determinations in order to promote stability and continuity for the children, and to discourage repeated litigation of the same issues. *See Jones v. Jones*, 328 Ark. 97, 940 S.W.2d 881 (1997). Because the chancellor modified visitation where there was no material change in circumstances, we reverse and dismiss his order reducing appellant's visitation.

Reversed and dismissed.

BIRD and KOONCE, JJ., agree.